UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES GRAWEY, and
DAWN WENTWORTH

        Plaintiffs,

v.

        Case Number 06-12078-BC
        Honorable Thomas L. Ludington

CLARE CITY POLICE LIEUTENANT
T. DRURY, *in his individual capacity*,
CLARE CITY POLICE OFFICER DAVID
SAAD, *in his individual capacity*, CLAIRE
CITY POLICE AUXILIARY OFFICER
S. DAVIS, *in his individual capacity*, CLARE
COUNTY DEPUTY BRAD DAVIS, *in his
individual capacity*, CLARE COUNTY
DEPUTY KYLE KEHN, *in his individual
capacity*, SENECA BOOTH, *an individual*, and
G&D GOOSSENS, INCORPORATED, D/B/A
B-C-G TOWN AND COUNTRY, *a Michigan
Corporation,* Jointly and Severally,

        Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on Defendants Brad Davis's ("Defendant B. Davis"), Kyle Kehn's ("Defendant Kehn"), and David Saad's ("Defendant Saad") motions for summary judgment under Federal Rule of Civil Procedure 56. Plaintiff James Grawey ("Plaintiff") brought claims against City of Clare police officers and County of Clare sheriff's deputies for violation of his fourth amendment rights, and assault and battery stemming from police action in response to his involvement in a bar room altercation. Plaintiff's response indicated that he did not oppose Defendant Kehn's motion in its entirety, nor Defendants Davis's and Saad's motions in part. Thus,

the Court will **GRANT** the motions with respect to the uncontested portions. The Court will **DENY** the contested portions of Defendants' motions for summary judgment because Plaintiff's and eye witnesses' depositions create a triable issue as to the objective reasonableness of Defendants' acts.

The Court has reviewed the parties' submissions and finds that the facts and the law have been sufficiently set forth in the motion papers. The Court concludes that oral argument will not aid in the disposition of the motions. Accordingly, it is **ORDERED** that the motions be decided on the papers submitted. *Compare* E.D. Mich. LR 7.1(e)(2).

I

Plaintiffs brought the instant suit claiming injuries from a physical altercation with another customer at a karaoke bar and police misconduct resulting after the altercation. Plaintiff is a thirty-four year old, homosexual male[1] residing in Auburn Hills, Michigan.

The pending motions for summary judgment were brought by three police officer defendants. Two additional police officer defendants, Clare City Auxilliary Police Officer S. Davis and Clare City Police Lieutenant T. Drury did not file motions for summary judgment. As an overview, there are three distinct stages of events that Plaintiff contends caused injury to him. First, Plaintiff and Defendant Seneca Booth ("Booth"), a fellow bar patron, engaged in a physical altercation inside the Peppermint Lounge resulting in an injury to Plaintiff's head. Second, Defendant Saad, a Clare City police officer, pepper sprayed Plaintiff after a brief interaction between officers and Plaintiff outside of the Peppermint Lounge. Third, Plaintiff contends Defendant B. Davis, a County of Clare sheriff's deputy, and other officers broke his ankle when the officers lifted and placed him into a police vehicle.

---

[1] Though Plaintiff's sexuality is not legally relevant, Plaintiff alleges that officers used excessive force against him, in part, because they heard that Plaintiff was homosexual.

According to Plaintiff's deposition, on June 16, 2005, Plaintiff visited his family in Clare, Michigan for the purposes of attending an open house celebration for his cousin. Plaintiff attended the open house from 2:00 p.m. until roughly 6:00 p.m. After the open house, Plaintiff returned to his mother's home with four or five family members. At the house, Plaintiff consumed a margarita. Plaintiff then took a nap for an undetermined period. Around 8:00 p.m., Plaintiff's friend woke him to invite him to attend the Peppermint Lounge, a karaoke bar at a local bowling alley. Plaintiff, along with four friends, arrived at the Peppermint Lounge some time between 9:30 and 10:15 p.m. According to Plaintiff's affidavit, Plaintiff only consumed the single margarita and may have taken the anti-depressant medication, Lexapro,[2] prior to arriving at the Peppermint Lounge. While there Plaintiff consumed a vodka tonic, a shot of tequila, and a long island iced tea over a two hour period. He also ordered, and may have consumed, another long island iced tea. After the incidents, hospital records indicate that Plaintiff's blood alcohol level was 0.19 percent.

At the Peppermint Lounge, Plaintiff sat at a table with a group of people. Though unclear, a woman sitting at the table was associated in some manner with the perpetrator of the assault, Booth. At some point in the evening, Plaintiff was sitting next to this woman at the table, while Defendant Seneca Booth was standing behind them. Booth leaned forward and said something in Plaintiff's ear. Plaintiff did not hear what Booth said, but thought that the statement concerned a disappointing karaoke performance. In response, Plaintiff said "[y]ou know you like it." Apparently, Booth said, "[w]hy did you touch my woman?" or something similar.

Plaintiff, unaware that he had offended Booth, turned away from him to focus on the karaoke stage. Immediately thereafter, Plaintiff felt an "intense crush on his forehead." Plaintiff's head hit

---

[2] Plaintiff's affidavit indicates that he was regularly taking Lexapro, but could not recall whether he had consumed a Lexapro on June 16, 2005.

the table, he collapsed to the ground, and then stood up on his own power. Then Booth and he engaged in some pushing and shoving, but were eventually separated.

According to Plaintiff's affidavit, he recalls "snap shots" of the events immediately after the altercation in the bar. Plaintiff recalls exiting the bar, seeing two police officers, and approaching them in order to attain assistance. One of those police officers was Defendant Saad. Plaintiff told the officers[3] that a customer "attacked" him and that officer told Plaintiff, "tell me what happened." While Plaintiff explained the recent events, he had his hands on the injury on his head. The police officer told Plaintiff to put his hands down two or three times. Plaintiff did not comply with the request. Plaintiff became increasingly agitated in response to the officer's continued orders to put his hands down.

At that point, Plaintiff walked away from the officers and towards his truck. According to Plaintiff's affidavit, the officers did not order Plaintiff to stop or say anything to Plaintiff. Plaintiff then noticed that Defendant Saad was behind him. At that point, Defendant Saad first discharged pepper spray. Plaintiff only smelled the initial discharge. In response, Plaintiff ran away from the officers in the direction of his mother's house.

After a short distance, Plaintiff stopped running, placed his hands on a store front window, and waited for the pursuing officer. The officer approached Plaintiff from behind, placed his hand in Plaintiff's face, and discharged the pepper spray. Plaintiff held his breath and the officer responded, "[w]ell, you have to breathe sometime." After a few moments, Plaintiff inhaled and the officer stated, "[t]here you go," or "[t]ake a good deep breath." The officer continued to discharge the pepper spray and Plaintiff collapsed to the sidewalk and fell unconscious. Plaintiff regained

---

[3] In his deposition, Plaintiff does not indicate which officer he conversed with. Later in his deposition, Plaintiff indicates that Defendant Saad discharged the pepper spray.

consciousness the next morning at the hospital.

According to Defendant Saad's deposition, Plaintiff was extremely agitated when Defendant Saad arrived outside of the Peppermint Lounge. Defendant Saad acknowledged in his deposition that he could see the bump on Plaintiff's forehead. Defendant Saad attempted to ascertain the proceeding events, but Plaintiff remained agitated and did not answer his questions. After Defendant Saad asked "what happened?" for the second time, Plaintiff replied "fuck you." At that point, Defendant Saad told Plaintiff that he was under arrest and asked him to put his hands behind his back. Plaintiff did not comply and backed away. He then went in between a car, such that the car was between Defendant Saad and Plaintiff. Plaintiff then fled on foot from Defendant Saad. After running for about a city block, Plaintiff stopped and placed his hands on a store front window.

When Defendant Saad reached Plaintiff, he instructed Plaintiff to put his arms behind his back. Plaintiff clenched all the muscles in his body and ignored the order. Defendant Saad discharged the pepper spray, Plaintiff fell to the ground, and Defendant Saad placed handcuffs on Plaintiff. At that point, Defendant Saad received support from other officers arriving on the scene. Defendant Saad did not have any recollection that Plaintiff regained consciousness until the they arrived at the hospital.

After Plaintiff fell unconscious, Plaintiff alleges that the defendant officers broke his ankle while they rolled him over and placed him in a police vehicle. During this time, Plaintiff's mother, Mary Grawey, was present and documented the events with a still camera.

Mary Grawey arrived at the scene after Defendant Saad pepper sprayed Plaintiff. She witnessed and took photographs of the officers turning Plaintiff over. The picture shows that Defendant B. Davis was holding both of Plaintiff's legs, as Plaintiff lay on the ground with his eyes

closed. She stated that "the one officer grabbed his leg and twisted his leg over instead of rolling him over." *Pl. Response Exhibit 1* at 21:21-23. She testified as follows: "When he took and had his legs up in the air, and I didn't understand what they were doing, because the kid is totally out of it. He was laying flat on the ground. All they had to do is roll him over, and instead they picked his foot up and flipped him, and I didn't understand that. He was unresponsive, he wasn't combative." *Id.* at 24:7-13. One of Plaintiff's friends present that night, Melissa Burtch, testified that she saw the officer bend Plaintiff's leg up towards the middle of his back or shoulder. *Davis's Reply Exhibit 1* at 77:10-13.

According to Defendant B. Davis's deposition, he arrived at the scene in response to a request for back-up. At that point, Defendant Saad had Plaintiff under control. Defendant B. Davis helped Defendant Saad and another officer roll Plaintiff over. Defendant B. Davis acknowledged lifting Plaintiff's legs while turning him over and carrying Plaintiff with others to a police vehicle by his legs. He did not recall whether the officers closed the vehicle's door on Plaintiff's leg, though he did not close the door.

Plaintiff alleged four causes of action in his complaint. Count I alleged violation of his fourth amendment rights by Defendants Saad, B. Davis, Kehn, and Officer S. Davis. Count I plead two theories: (a) arrest, detention, and prosecution without probable cause and (b) excessive use of force. Count II alleged that Defendants Saad, Kehn, Officer S. Davis, and Officer Drury failed to intervene to stop the excessive use of force. Count III alleges a dram shop action against the proprietors of the Peppermint Lounge. Finally, Count IV alleges assault and battery against Defendants Saad, Kehn, B. Davis, S. Davis, and Booth.

Defendant Kehn moved for summary judgment, which Plaintiff does not oppose. As such, the Court will grant the motion with respect to Defendant Kehn. Defendants Saad and Defendant

Brad Davis moved for summary judgment. Likewise, Plaintiff did not oppose Defendants' motion with respect to the Count I theory of arrest and prosecution without probable cause or Count II for failure to intervene. Again, the Court will grant the uncontested portions of the motions.

As a result, the remaining issues before the Court are whether Defendant Saad and/or Defendant B. Davis violated Plaintiff's fourth amendment rights by using excessive force and whether each committed assault and battery on Plaintiff. Defendant Saad and Davis contend that their actions were objectively reasonable such that each is entitled to judgment as a matter of law with respect to the excessive force claim. Alternatively, they contend that they are entitled to qualified immunity from the excessive force claim. Defendant Saad contends that he is entitled to summary judgment of the assault and battery claim because the actions were pursuant to a lawful arrest. Defendant B. Davis contends that he is immune from assault and battery under Michigan's governmental immunity from tort liability statute. See Mich. Comp. Laws § 691.1407(2).

II

A motion for summary judgment under Federal Rule of Civil Procedure 56 presumes the absence of a genuine issue of material fact for trial. Under Rule 56(c), a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Michigan Paytel Joint Venture v.*

*City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002).

The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252. "[T]he party opposing the summary judgment motion must 'do more than simply show that there is some "metaphysical doubt as to the material facts."'" *Highland Capital, Inc. v. Franklin Nat. Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994), and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

III

The Court has subject matter jurisdiction over the matter pursuant to Plaintiff's causes of action brought under federal law. 28 U.S.C. § 1331. The Court may exercise pendent jurisdiction over Plaintiffs' related state claim and the Court must apply Michigan law to those claims. 28 U.S.C. § 1367; *see generally Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938).

A

An "excessive force claim arising in the context of an arrest . . . is most properly characterized as one invoking the protections of the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 395 (1989); see also *Smoak v. Hall*, 460 F.3d 768, 783 (6th Cir. 2006). A police officer's conduct is viewed "from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight." *Graham*, 490 U.S. at 394 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968). "[T]he question is whether the officers' actions are objectively reasonable in light of the facts and

circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (citation omitted). In determining whether an officer's action is objectively reasonable, the Court "should consider the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others. and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985); see also *Smoak*, 460 F.3d at 783.

Defendant Saad contends that his actions were objectively reasonable as a matter of law. Under his recitation of the facts, the use of pepper spray was reasonable. Defendant Saad used pepper spray after Plaintiff attempted to evade arrest. Though Plaintiff stopped and placed his hands on the window, Defendant Saad testified that Plaintiff was very rigid and resisted placing his hands behind his back.

Plaintiff's deposition, however, recounts different facts. First, Plaintiff testified that Defendant Saad told him to put his hands down, but did not testify that he had been told that he was under arrest. Second, Plaintiff recalls that he walked away without any order directing him not to do so. He acknowledged that he did run from the police but stopped and waited for them. When Defendant Saad reached Plaintiff, Plaintiff testified that Defendant Saad discharged pepper spray for an extended period of time. As a result, Plaintiff fell unconscious.

The parties' alternate version of the events demonstrates a triable issue of fact. First, there is a dispute as to what commands Defendant Saad gave to Plaintiff. It is unclear whether Defendant Saad told Plaintiff that he was under arrest or told him not to walk away from the scene. Second, the testimony differs as to Plaintiff and Defendant Saad's actions when Plaintiff stopped running. Plaintiff testified that Defendant immediately pepper sprayed him when he reached him. Defendant testified that he tried to handcuff Plaintiff before he used pepper spray, but that Plaintiff resisted by

tensing his body. Finally, there appears to be a discrepancy about the amount of pepper spray used. Plaintiff recalled Defendant Saad discharging the pepper spray for an extended period, whereas Defendant Saad testified that he discharged the pepper spray for a few seconds.

Plaintiff's actions evaluated under the factors laid out in *Graham*, 490 U.S. at 396, tends to show that there is a triable issue as to whether Defendant Saad acted reasonably. Plaintiff may have been evading arrest, though he did not objectively appear to be a danger to officers or others, and the suspected crime of disorderly conduct is relatively trivial. As such, prolonged use of pepper spray may not have been objectively reasonable. See *Greene v. Barber*, 310 F.3d 889, 898 (6th Cir. 2002) (finding that a triable issue existed when an officer used pepper spray on a suspect that actively resisted arrest, but did not threaten the safety of others and suspected of creating a disturbance in a public place).

On the contrary, it appears uncontested that Defendant B. Davis arrived after Defendant Saad discharged the pepper spray. Though the complaint appears to allege that Defendant B. Davis was present during the pepper spray, Plaintiff's response only addresses Defendant B. Davis's handling of Plaintiff's leg. Thus, the Court should grant Defendant B. Davis's motion with respect to the pepper spray.

Defendant B. Davis contends "plaintiff can point to nothing in the record to show that the Defendant Deputies exercised more force than necessary to turn the Plaintiff over and to place him in a police vehicle." *Davis's Brief* at 7. His deposition supports his contention that the officers did not exercise excessive force. Mary Grawey's deposition, however, stated that Defendant B. Davis turned over the uncombative, and unconscious Plaintiff by his foot. Mary Grawey also took a photograph that depicted Defendant B. Davis grasping Plaintiff's foot at Defendant B. Davis's waist level, while Plaintiff lay on the ground with his eyes closed. Additionally, Michelle Burtch testified

-10-

that the officer bent Plaintiff's leg up to the middle of his back or shoulder.[4] Considering that it is uncontested that Plaintiff was unconscious during this portion of the arrest, there is a triable issue of fact that Defendant B. Davis did not act objectively reasonable in handling Plaintiff. Thus, the Court will deny Defendant B. Davis's motion with respect to the handling of Plaintiff.

B

"Qualified immunity provides 'that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Champion v. Outlook Nashville, Inc.,* 380 F.3d 893, 900 (6th Cir.) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Sixth Circuit undertakes a three step analysis to determine whether the official is entitled to immunity.

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Id.* at 901. With regard to the second step, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness

---

[4] Defendant B. Davis's reply brief points out that Michelle Burtch's testimony refers to the bending of Plaintiff's right leg, whereas Plaintiff alleges his left angle was broken. Defendant's reply brief does not point out that Burtch states in her deposition that she believes it is the right leg, because she saw a picture. The picture submitted with Plaintiff's response shows Defendant B. Davis holding both legs.

-11-

must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citations omitted).

The Sixth Circuit has found that the use of pepper spray on a handcuffed and hobbled person is clearly established to be excessive. *Champion,* 380 F.3d at 903. "As a general rule, we have held that the use of pepper spray is excessive force when the detainee 'surrenders, is secured, and is not acting violently, and there is no threat to the officers or anyone else.' " *Cabanis v. City of Riverside*, 231 Fed. Appx. 407, 413 (6th Cir. 2007) (unreported) (quoting *Champion*, 380 F.3d at 903 (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1348 (11th Cir.2002))). Additionally, when police officers subdue a suspect to the point that they are not trying to escape or are not a threat, the necessity for force is nonexistent. *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th. Cir. 1988).

Both Defendant Saad and Defendant B. Davis contend that each is entitled to qualified immunity. Considering the Court's analysis discussed above, the Court finds a triable issue of fact that a constitutional violation occurred in each instance.

Second, it appears that Plaintiff's rights were clearly established. With respect to the pepper spray, Plaintiff's version of the facts indicates that he was not ordered under arrest, that he stopped running away, waited for police with his hands on a wall, and Defendant Saad began immediately spraying him. If this version of facts are true, Plaintiff had a clearly established right not to be sprayed with pepper spray if he submitted to the police officer's authority.

Likewise, viewing Plaintiff's allegations against Defendant B. Davis, there is a triable issue that Plaintiff's rights were clearly established. It is uncontested that Plaintiff was unconscious when Defendant B. Davis addressed him. Eye witnesses testified that Defendant B. Davis turned Plaintiff over by his leg and bent his leg up into the middle of his back or shoulder. If true, there appears to be no legitimate justification for either of these acts by Defendant B. Davis on an unconscious

person. As such, Plaintiff's right was clearly established and the second prong is met.

The final inquiry is whether each officer's acts were objectively unreasonable. This factual inquiry turns, once again, on whose version of the facts are the most accurate. Viewing the facts in a light most favorable to the Plaintiff, however, both acts appear objectively unreasonable. With respect to the pepper spray, Plaintiff, an agitated and injured assault victim, waited for the police, with his hands on a wall. When Defendant Saad approached him, he immediately doused Plaintiff with pepper spray to the point that Plaintiff fell unconscious. With respect to Defendant B. Davis, he allegedly folded his leg up to his shoulder and used his ankle to turn over an unconscious individual. Both of these appear to be objectively unreasonable.

## C

"An assault is any intentional, unlawful threat or offer to do bodily injury to another by force, under circumstances which create a well-founded fear of imminent peril, coupled with the apparent present ability to carry out the act if not prevented." Mich. Civ. JI 115.01. "A battery is the willful or intentional touching of a person against the person's will." Mich. Civ. JI 115.02. A police officer may use "reasonable force" if an individual resists a lawful arrest. *Tope v. Howe*, 445 N.W.2d 452, 459 (Mich. Ct. App. 1989) (citing *Delude v. Raasakka*, 215 N.W.2d 685 (1974). A person that has knowledge, or should know, that he is being lawfully arrested has the duty to refrain from resisting arrest. Mich. Civ. JI 115.09. "[A]n officer who uses more force than is reasonably necessary to effect a lawful arrest commits a battery upon the person arrested to the extent the force used was excessive." *Id.*

Defendant Saad contends that he is not liable for assault and battery because his actions were justified as they were in conjunction with a lawful arrest. Though it appears to be the case, the

-13-

record does not clearly indicate that Plaintiff was placed under arrest. More importantly, however, Defendant Saad is not entitled to summary judgment because there is a triable issue regarding the amount of force used. As previously discussed, a dispute exists between Plaintiff's and Defendant Saad's recollection of events, such that it is unclear whether the exercise of force was indeed reasonable.

As a threshold matter, Defendant B. Davis is entitled to summary judgment in his favor of the assault claim, because Plaintiff was unconscious during the entire interaction. Moreover, Defendant B. Davis contends that Plaintiff can not establish that his actions were the proximate cause of Plaintiff's broken ankle.[5] Though this assertion has merit, the photograph coupled with Michelle Burtch and Mary Grawey's testimony raises sufficient circumstantial evidence to establish a triable issue that Defendant B. Davis's acts were the proximate cause of Plaintiff's ankle injury.

"Under Michigan law, an officer is given immunity from tort liability in the performance of his public duties unless he is grossly negligent." *Battiste v. Rojeski*, 257 F.Supp. 2d 957 (E.D. Mich. 2003). A police officer is immune from tort liability if the act was performed under the scope his authority, while the officer was engaged in the exercise of a governmental function, and did not amount to gross negligence. Mich. Comp. Laws § 691.1407(2).

It is uncontested that Defendant B. Davis[6] was acting in the scope of his authority and engaged in the exercise of a governmental function. The sole inquiry is whether his acts amount to gross negligence. As discussed above, Plaintiff's allegations and supporting evidence establish a

---

[5] In his brief, Defendant B. Davis raised the proximate cause argument under the Fourth Amendment violation argument. Though he did not specifically raise the argument again under Assault and Battery, it appears to be relevant for this claim.

[6] Defendant Saad did not contend that he was entitled to governmental immunity under Mich. Comp. Laws § 691.1407(2).

triable issue that Defendant B. Davis acted grossly negligent by turning over an incapacitated man by his foot.

IV

Accordingly, it is **ORDERED** that Defendants Brad Davis's and Kyle Kehn's motion for summary judgment [dkt. # 44] is **GRANTED** in part and **DENIED** in part. Defendant Kehn's motion is granted in its entirety, and all claims against Defendant Kyle Kehn are **DISMISSED WITH PREJUDICE.** Defendant Brad Davis's motion is granted with respect to Count I predicated on arrest and detention without probable cause, Count II in its entirety, and Count IV predicated on assault and those claims are **DISMISSED WITH PREJUDICE**. Defendant Brad Davis's motion is denied with respect to Count I predicated on excessive force theory, and with respect to Count IV predicated on a battery theory.

It is further **ORDERED** that Defendant David Saad's motion for summary judgment [dkt. # 43] is **GRANTED** in part and **DENIED** in part. Defendant David Saad's motion is granted with respect to Count I predicated on arrest and detention without probable cause, and Count II in its entirety those claims are **DISMISSED WITH PREJUDICE**. Defendant David Saad's motion is denied with respect to Count I predicated on excessive force theory, and with respect to Count IV.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: December 11, 2007

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 11, 2007.

                                          s/Tracy A. Jacobs
                                          TRACY A. JACOBS